IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALVIN COREY,** | : | **CIVIL NO. 3:15-CV-1335** |
| | : | |
| **Petitioner,** | : | **(Judge Kosik)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **J. BALTAZAR, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

This habeas corpus petition invites the Court to address a series of legal questions regarding the application of the Second Chance Act, a 2008 federal statute which provides prison officials with greater discretion in assisting inmates in making the transition back into society by permitting prison officials to place inmates in Residential Re-entry Centers (RRC) up to 12 months before they are released from custody.  Although Corey invites us to reach and resolve all of these legal issues, he extends this invitation to us without first having invited the Bureau of Prisons to fully address his concerns by first filing proper, timely, and comprehensive administrative requests for relief from this RRC placement decision that Corey now challenges.

1

It is recommended that the Court decline this invitation to address these legal issues since it is well-settled that a federal inmate who wishes to bring a habeas corpus petition based upon an alleged failure by prison staff to comply with the Second Chance Act must first exhaust administrative remedies within the prison system.  For the reasons set forth below, we conclude that exhaustion of these administrative remedies is a prerequisite to federal habeas corpus relief in this setting, and further find that Corey has failed to exhaust his administrative remedies prior to bringing this action, a failure which compels dismissal of this case.

Beyond the threshold question of exhaustion, this petition also invites us to determine whether, and to what extent, the Second Chance Act gives federal inmates a substantive right to early release to a halfway house or other non-custodial setting as they near the conclusion of their prison terms.  With respect to this question, we find, that the Act does not create a specifically enforceable right to release at any particular time.  Rather, it provides guidance to prison officials in the exercise of their longstanding statutory discretion concerning inmate placements, guidance that permits, but does not compel, earlier release to a residential setting for inmates.  Accordingly, what the law requires is for prison staff to give each inmate individualized consideration for earlier residential release, but leaves that individualized assessment largely in the discretion of corrections staff.  In this case,

we find that the requirements of the Act have been fully met here where the evidence shows that the petitioner received a carefully tailored and individualized assessment of his suitability for placement in a Residential Re-entry Center. Therefore, if the Court reaches the merits of this claim, it is recommended that the petition be denied on the merits.

## II.   Statement of Facts and of the Case

### A.   Alvin Corey

Alvin Corey Davis is a federal inmate who was sentenced as an armed career criminal on July 30, 1998, in the United States District Court for the District of Maine, to a 260-month term of imprisonment following his conviction on a charge of being a felon in possession of firearms. (Doc. 7-1 Attach. 2.) Corey currently has a projected release date of September 6, 2016. (Id.) As an armed career criminal Corey must have incurred at least three prior felony convictions for either crimes of violence or drug trafficking offenses at the time of this federal firearms conviction. 18 U.S.C. §924(e). Therefore, the record reveals Corey to have been a criminal recidivist at the time of the instant conviction.

### B.   The Second Chance Act and BOP Implementing Guidance

In April of 2008, the Second Chance Act of 2007, Pub. L. No. 110-199, went into effect. This act contains several provisions which are designed to aid prisoners

in their transition back into society.  For example, the Act authorizes the Bureau of

Prisons to place certain inmates in RRCs for as much as one year at the end of their

prison terms to aid them in their readjustment into society.  <u>See</u> 18 U.S.C. §

3624(c)(1).[1]

---

[1]18 U.S.C. § 3624(c) provides as follows:

**( c ) Prerelease custody.**–

**(1) In general.**--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.  Such conditions may include a community correctional facility.

**(2) Home confinement authority.**--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

**(3) Assistance.**--The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during prerelease custody under this subsection.

**(4) No limitations.**--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621

18 U.S.C. § 3624 (c).

The Bureau of Prisons has adopted a series of policies, practices and procedures which govern inmate placement and custody. These policies have developed over time, speak to the issue of RRC placements of inmates and generally provide as follows: Procedurally, recommendations for RRC placements are ordinarily first reviewed with the inmate and the prisoner's Unit Team approximately 17-to-19 months prior to the inmate's probable release date. (Id.) Referrals to the Community Corrections Manager (CCM), who coordinates such placements, typically should be completed approximately two months prior to the inmate's anticipated release date and the completed referral packet should be forwarded to the CCM at least 60 days prior to the maximum recommended range or date. (Id.) Each inmate recommendation and referral is conducted by staff with the understanding that inmates are entitled to a maximum RRC placement of twelve months, but that specific RRC placement recommendations should be based on an individualized assessments of a particular inmate's needs for services, public safety, and the necessity of the Bureau of Prisons to manage its inmate population responsibly. (Id.). Therefore, when assessing an inmate for an RRC recommendation, the prison Unit Team must review the resources of the facility contemplated, the nature and circumstances of the inmate's offense, the history and characteristics of the inmate, any statement of the court that imposed the sentence, and any pertinent policy statement issued by the U.S. Sentencing

Commission.  (Id. ¶ 7.)  The inmate's institutional conduct and programming are also an important part of this assessment process, and are considered to determine whether additional RRC time is warranted as an incentive for positive behavior by the inmate under 42 U.S.C. § 17541.

### C.     The Status of Corey's RRC Placement Request

In this case, on April 21, 2015, Corey was submitted by his Unit Team for RRC placement.  Due to Corey's extensive criminal history, his tentative release planning, and his need for services, he was initially recommended by his Unit Team and Warden for a 270-day RRC placement.  This recommendation was based on the five factors contained in 18 U.S.C. § 3621 as those factors applied to Corey.  The recommendation was then sent to the Residential Re-entry Manager.  The Residential Re-entry Manager works in the Community Corrections branch of the BOP and, among other things, serves as the liaison between BOP institutions and RRC facilities.  As part of these duties, the Residential Re-entry Manager assesses RRC placement recommendations, taking into account space and facility limitations.  On August 7, 2015, BOP staff was notified by the Residential Re-entry Manager that Corey received 181 days of RRC placement.

D.    **Bureau of Prisons Grievance Procedures and Corey's Failure to Complete an Administrative Challenge This RRC Placement Decision**

With respect to inmate concerns regarding RRC placements and other matters, the Bureau of Prisons has adopted a three-tiered administrative remedy procedure with respect to inmate complaints which is set forth at 28 C.F.R. § 542.10, et seq. As part of this grievance process, inmates should first present their complaints to staff, and staff are obliged to attempt to informally resolve any issues before an inmate files a formal request for Administrative Remedy. Id. at § 542.13(a). At the second stage of this process, if an inmate is unable to informally resolve his complaint, the inmate may file a formal written complaint to the warden, on the appropriate form within 20 calendar days of the date on which the events which form the basis for the complaint took place. Id. at § 542.14(a). If the inmate's concern is not addressed to the inmate's satisfaction by the warden's response, the inmate may then file an appeal to the Regional Director within 20 calendar days. Id. at § 542.15(a). Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed to the General Counsel (Central Office) within 30 calendar days from the date of the Regional Director's response. Id. The Regional Director then has 30 calendar days to respond and the General Counsel has 40 calendar days to address the inmate's concern. Id. at § 542.18.

As these regulations state:  "The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own imprisonment."  28 C.F.R. § 542.10(a).  Under this grievance process: "If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures."  Id. at § 542.10(c).  Furthermore, under these procedures, no administrative remedy appeal is considered to have been fully exhausted until decided by the Central Office.  28 C.F.R. § 542, et seq.

In this case, Corey had not fully exhausted his administrative remedies at the time he filed this petition.  While Corey had filed remedies with the institutional and regional levels, he had not fully pursued the last step in this process by filing a proper appeal with the Central Office.  Rather than denying his appeal on the merits, the Central Office rejected his initial, incomplete appeal for failure to comply with the filing requirements.  At the time he brought this action Corey had not yet filed a fully compliant appeal with the Central Office a fact which he acknowledged in his petition.

### E.    Corey's Habeas Petition

Dissatisfied with this RRC placement process and decision, Corey filed the instant federal habeas corpus petition on July 8, 2015, challenging the Bureau of Prisons' implementation of the Second Chance Act provisions relating to the

placement of inmates into community corrections centers, and the BOP's method of determining his eligibility for a community confinement facility in his case.  (Id.) According to Corey, this RRC placement violates the Act and does not ensure his successful transition back into the community.  (Id.)  The respondents have responded to this petition by noting that Corey failed to exhaust his administrative remedies, and further arguing that this placement decision comports with the requirements of the Second Chance Act.  These issues have been fully briefed by the parties (Docs. 1, 7, 8, 9 and 10.) and are now ripe for disposition.  For the reasons set forth below, it is recommended that the Court deny this petition.

### III.   Discussion

#### A.    The Exhaustion Doctrine  Bars Consideration of This Habeas Petition

In our view, this petition suffers from a fundamental procedural flaw, since the petitioner has failed to properly exhaust his administrative remedies within the federal prison system.   Although 28 U.S.C. § 2241 contains no express exhaustion requirement, "[o]rdinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241."  Gambino v. Morris, 134 F.3d 156, 171 (3d Cir.1998); see also, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir.2000); Bradshaw v. Carlson, 682 F.2d

1050, 1052 (3d Cir.1981).  These exhaustion rules serve an important and salutary purpose.  The United States Court of Appeals for the Third Circuit requires administrative exhaustion of a claim raised under § 2241 for three reasons:  "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy."  Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir.1996); see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir.1988).

In this case, it is undisputed that Corey has not fully exhausted his administrative remedies with respect to this RRC placement decision prior to filing this petition.  Indeed, Corey acknowledges this fact in his petition, but urges the Court to forego exhaustion in the exercise of its discretion.  With respect to habeas claims like those presented by here, which seek placement in a residential setting under the Second Chance Act, it is well settled that

> Courts in the Middle District of Pennsylvania have consistently held that "exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals before the twelve-month pre-release mark, which is simply a statutory maximum and not a mandate."  See Malvestuto v. Martinez, 2009 U.S. Dist. LEXIS 78231, *9 (M.D.Pa. Sept. 1, 2009) (Conner, J.); Melchiorre v. Martinez, 2009 U.S. Dist. LEXIS 91137, *7

(M.D.Pa. Sept. 30, 2009) (Conner, J.); <u>D'Alfonoso v. Martinez</u>, 2009 U.S. Dist. LEXIS 90344, *6 (M.D.Pa. Sept. 30, 2009) (Conner, J.); <u>Torres v. Martinez</u>, 2009 U.S. Dist. LEXIS 70577 (M.D.Pa. Aug. 12, 2009) (Munley, J.); <u>Miceli v. Martinez</u>, 2009 U.S. Dist. LEXIS 71877 (M.D.Pa. Sep. 15, 2008) (Rambo, J.)

<u>Ross v. Martinez,</u> No. 09-1770, 2009 WL 4573686, 3 (M.D.Pa. Dec. 1, 2009). Rigorously applying these exhaustion requirements, this Court has consistently rejected habeas petitions brought under the Second Chance Act where inmates have failed to fully exhaust their administrative remedies.  <u>See, e.g.,</u> <u>Bisulca v. Schism</u>, No. 09-2552, 2010 WL 1805394 (M.D.Pa. May 5, 2010); <u>McCooey  v. Martinez</u>, No. 09-1533, 2010 WL 411744 (M.D.Pa. Jan. 25, 2010); <u>Lacy-Thompson v. Martinez</u>, No. 09-1320, 2009 WL 4823875 (M.D. Pa. Dec. 14, 2009);  <u>Ferris v. Holt</u>, No. 09-1465, 2009 WL 3260557 (M.D. Pa. Oct. 8, 2009);  <u>Drummond v. Martinez</u>, No. 09-1258, 2009 WL 3241851 (M.D. Pa. Oct. 5, 2009).

As Judge Conner has previously explained when dismissing such a habeas petition challenging an RRC placement decision for failure to exhaust administrative remedies:

> [C]ourts in the United States Court of Appeals for the Third Circuit have consistently required an inmate to exhaust his administrative remedies prior to petitioning for a writ of habeas corpus.  Exhaustion is required for the following reasons:  "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial

11

resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Melchiorre v. Martinez, No. 09-1123, 2009 WL 3241678, *2 (M.D.Pa. Sept. 30,2009).

Nor can an inmate like Corey avoid this exhaustion requirement by simply asserting that he regards exhaustion as futile.   Quite the contrary, as this Court observed in Melchiorre,"exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals before the twelve-month pre-release mark, which is simply a statutory maximum and not a mandate. See 18 U.S.C. 3624(c) (1)-(6)." Id. at *3. See also, Bisulca v. Schism, No. 09-2552, 2010 WL 1805394 (M.D.Pa. May 5, 2010)(Conner, J., denying petition on exhaustion grounds).  Simply put, there is no futility exception to this exhaustion requirement.  Garcia v. United States, 518 F. App'x 78, 79 (3d Cir. 2013).  Indeed, as the court of appeals has aptly noted in this regard, when examining discretionary prison decisions regarding RRC placement, exhaustion is required before a prisoner may proceed into federal court.  Vasquez v. Strada, 684 F.3d 431, 434 (3d Cir. 2012).  Because Corey did not exhaust his available administrative relief regarding the failure to consider him for transfer or community placement under the Second Chance Act at the time he filed this petition, and has not shown that the failure in pursuing administrative relief should be excused, this Court should, as a threshold

matter, dismiss the petition for failure to exhaust administrative remedies, without prejudice to the filing of a new § 2241 petition after the petitioner fully exhausts appropriate administrative relief.  See also, Lindsay v. Williamson, 271 F. App'x. 158, 160 (3d Cir. 2008); Craig v. Zickefoose, No. 09-6513, 2010 WL 234908 (D.N.J. Jan. 15, 2010); Shoup v. Schultz, No. 09-0585, 2009 WL 1544664, at *4 (D.N.J. June 2, 2009); Breazeale v. Shultz, No. 09-2118, 2009 WL 1438236 (D.N.J. May 19, 2009).

## B.   This Petition Fails on Its Merits

In any event, we are constrained to conclude that Corey has not carried his burden of establishing that this discretionary decision by the Bureau of Prisons violated any rights guaranteed to him by the Constitution or laws of the United States. Therefore, we would, in the alternative, recommend that this petition be denied on its merits.

At the outset, it is clear that this petition does not raise any concerns of a Constitutional dimension.  Nor can Corey rely upon Constitutional concerns to challenge this RRC placement decision since it is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification.  Moody v. Daggett, 429 U.S. 78, 88 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976).  Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the

13

[challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." Id.

Similarly, it has long been recognized that the mere fact of a prison transfer, standing alone, does not constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. See, e.g., Hassain v. Johnson, 790 F.2d 1420 (9th Cir. 1986); Serrano v. Torres, 764 F.2d 47 (1st Cir. 1985). Thus, even inmate transfers to facilities far from their homes do not rise to the level of cruel and unusual punishment. See, e.g., Gov't of Virgin Island v. Gereau, 592 F.2d 192 (3d Cir. 1979)(transfer from Virgin Islands to mainland); Rodriguez-Sandoval v. United States, 409 F.2d 529 (1st Cir. 1969)(transfer from Puerto Rico to Atlanta). In short, well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, such as a Residential Re-entry Center, to any security classification, or to any particular housing assignment. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215 225 (1976); Montanye, 427 U.S. at 242; Bulger v. U.S. Bureau of Prisons, 65 F.3d 48 (5th Cir. 1995); Marchesani v. McCune, 531 F.2d 459 (10th Cir.1976).

Rather, Corey's sole avenue for substantive relief lies through the Second Chance Act itself. With respect to habeas claims premised on the Act, as we have noted, in April of 2008, the Second Chance Act of 2007, Pub. L. No. 110-199, went

14

into effect.  This act contains several provisions which are designed to aid prisoners in their transition back into society.  For example, the Act authorizes the Bureau of Prisons to place certain inmates in Residential Re-entry Centers for up to one year at the end of their prison terms to aid their readjustment into society.  See 18 U.S.C. § 3624(c)(1).[2]

------

[2]18 U.S.C. § 3624(c) provides as follows:

**( c ) Prerelease custody.**–

**(1) In general.**--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.  Such conditions may include a community correctional facility.

**(2) Home confinement authority.**--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

**(3) Assistance.**--The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during prerelease custody under this subsection.

**(4) No limitations.**--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621

18 U.S.C. § 3624(c).

While the Act, promotes policies assisting inmates in reintegration into society, nothing in the Act is mandatory, and the Act does not compel the Bureau of Prisons to provide particular inmates with a specific community confinement or home detention placement.  Quite the contrary, the statutory text makes it clear that prison officials retain their broad discretion in placing, housing, transferring and classifying inmates.  Thus, 18 U.S.C. § 3624(c)(4) clearly states that the Act in no way restricts the broad discretion conferred upon the Bureau of Prisons under 18 U.S.C. § 3621 to make decisions on how best to house inmates, providing that:  "Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621".  Section 3621, in turn, broadly reaffirms the discretion of prison officials in this field to make appropriate prison placement decisions based upon five statutory factors set forth in 18 U.S.C. § 3621(b).[3]

_____

[3]18 U.S.C. § 3621(b) provides:

(b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-

(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;

16

Similarly, while the Second Chance Act amended 42 U.S.C. § 17541 to encourage the

Bureau of Prisons to examine early release and social re-integration for certain

offenders, the Act expressly reaffirms that decisions relating to which offenders may

qualify for the program involve assessments that rest in the sound discretion of the

Bureau of Prisons.  <u>See</u> 42 U.S.C. §§ 17541(a)(2) and (g)(5).

Indeed, as it relates to inmate community confinement decisions, the Second

Chance Act speaks directly to the discretion retained by the Bureau of Prisons in 18

U.S.C. § 3624(c)(1) which provides as follows:

**( c ) Prerelease custody.**–

**(1) In general.**--The Director of the Bureau of Prisons shall, to the extent
practicable, ensure that a prisoner serving a term of imprisonment spends
a portion of the final months of that term (not to exceed 12 months),
under conditions that will afford that prisoner a reasonable opportunity
to adjust to and prepare for the reentry of that prisoner into the

---

(4) any statement by the court that imposed the sentence--
    (A) concerning the purposes for which the sentence to
    imprisonment was determined to be warranted; or
    (B) recommending a type of penal or correctional facility as
    appropriate; and
(5) any pertinent policy statement issued by the Sentencing
Commission pursuant to Section 994(a)(2) of title 28 . . . Any order,
recommendation, or request by a sentencing court that a convicted
person serve a term of imprisonment in a community corrections
facility shall have no binding effect on the authority of the Bureau
under this section to determine or change the place of imprisonment
of that person.

17

community.   Such conditions *may* include a community correctional facility.

18 U.S.C. § 3624(c)(1)(emphasis added).

The use of the word "may" in § 3624, has led courts to consistently hold that the Act creates no absolute, enforceable legal right to a 12- month RRC placement for any prisoner.  See, e.g., O'Hara v. Rios, No. 08-5160, 2009 U.S. Dist. LEXIS 90243 (D. Minn. Sept. 28, 2009); McGee v. Thomas, No. 09-455, 2009 U.S. Dist. LEXIS 62617 (D. Ore. July 22, 2009).  Rather, what is required by the Act is a showing that the Bureau of Prisons engaged in an individualized determination of each inmate's RRC placement, using the statutory factors set forth in the law.  Smith v. Sanders, No. 09-3083, 2009 U.S. Dist. LEXIS 82265 (C.D. Cal. July 31, 2009).  Thus, when examining RRC placement decisions:  "[o]ur review is limited to whether the BOP abused its discretion."  Vasquez v. Strada, 684 F.3d 431, 434 (3d Cir. 2012); Wilson v. Strada, 474 F. App'x 46, 48 (3d Cir. 2012).  Absent an abuse of this broad discretion, courts have sustained the broad discretionary authority of the Bureau of Prisons to make these placement decisions.[4]

---

[4]See,e.g., Miller v. Whitehead, 527 F.3d 752,755-58 (8th Cir. 2008); Wires v. Bledsoe, No. 09-2247, 2010 WL 427769 (M.D.Pa. Feb. 3, 2010)(citing Torres v. Martinez, No. 09-CV-1070 (M.D.Pa. Aug.12, 2009)); Fleischi v. Outlaw, No. 09-79, 2009 U.S.Dist. LEXIS 99306 (E.D. Ark. Oct. 26, 2009); O'Hara v. Rios, No. 08-5160, 2009 U.S. Dist. LEXIS 90243 (D. Minn. Sept. 28, 2009); Holland v.

Adopting this deferential standard of review we believe that the record of these proceedings shows that Corey has received individualized consideration of his RRC placement at the prison, but that Corey's past criminal history, and other logistical concerns led prison officials to recommend a 181-day RRC placement for the petitioner.  Therefore, an assessment of the RRC placement decision in this case leads to the conviction that this decision represented an individualized assessment of the needs of both society and this prisoner, which is all that the law requires, and all that an inmate can demand.

Bureau of Prisons, No. 08-3960, 2009 WL 2872835 (D.S.C. Sept. 2, 2009); Smith v. Sanders, No. 09-3083, 2009 U.S. Dist. LEXIS 82265 (C.D. Cal. July 31, 2009); Yanucci v. Stansberry, No. 08-561, 2009 WL 2421546 (E.D.Va. July 28, 2009); McGee v. Thomas, No. 09-455, 2009 U.S. Dist. LEXIS 62617 (D. Ore. July 22, 2009); Sessel v. Outlaw, No. 08-212, 2009 WL 1850331 (E.D. Ark. June 25, 2009); Stanko v. Rios, No. 08-4991, 2009 WL 1303969 (D. Minn. May 8, 2009); Somerville v. DeWalt, No. 09-68, 2009 U.S.Dist. LEXIS 37454 (E.D. Ky. May 1, 2009); Snyder v. Angelini, No. 07-3073, 2008 U.S. Dist. LEXIS 86460 (E.D.N.Y. Oct. 27, 2008).  This view has been adopted by numerous courts in this district and the court of appeals. See, e.g., Vasquez v. Strada, 684 F.3d 431, 434 (3d Cir. 2012); Wilson v. Strada, 474 F. App'x 46, 48 (3d Cir. 2012) Ogman v. Ebbert No. 10-1342, 2010 WL 4922889, 3 (M.D.Pa. Nov. 12,  2010); Collins v. Martinez, No. 09-2454, 2010 WL 4272923 (M.D.Pa. October 25, 2010); Berlin v. Bledsoe, 2010 WL 3528571 (M.D.Pa. September 8, 2010) Cullum v. Bledsoe, Civil No. 09-2385, 2010 WL 2521035 (M.D.Pa. Jun.15, 2010); Ramos v. Holt, 2010 WL 2471707 (M.D.Pa. May 5, 2010); McDonald v. Obama, 2010 WL 1526443 (M.D.Pa. March 14, 2010); Wires v. Bledsoe, No. 09-2247, 2010 WL 427769 (M.D.Pa. Feb. 3, 2010).

## IV.   **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus filed pursuant to 28, United States Code, § 2241, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue.

The Petitioner is further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 29th day of October 2015.

_**S/Martin C.  Carlson**_
Martin C. Carlson
United States Magistrate Judge